**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 94-2680-CIV-LENARD/TORRES

**FLORIDE NORELUS, a/k/a
LAVICTORE REMY**,

Plaintiff,

vs.

**DENNY'S, INC. and T.W. SERVICES,
INC., foreign corporations, MEOS
CORPORATION, INC., a Florida
corporation, ASIF JAWAID,
individually, and RAHEEL HAMEED,
individually**,

Defendants.
_____/

**OMNIBUS ORDER ADOPTING FINDINGS OF FACT AND MODIFYING
CONCLUSIONS OF LAW CONTAINED IN MAGISTRATE JUDGE
BANDSTRA'S FEBRUARY 2, 1998 REPORT AND RECOMMENDATION (D.E.
452); ADOPTING IN PART AND MODIFYING IN PART MAGISTRATE JUDGE
O'SULLIVAN'S DECEMBER 15, 2000 REPORT AND RECOMMENDATION
(D.E. 548); GRANTING DEFENDANTS' MOTIONS FOR FEES, COSTS AND
EXPENSES (D.E. 348-351); AND DENYING DEFENDANTS' MOTION FOR
HEARING (D.E. 615)**

**THIS CAUSE** is before the Court on Remand from the Eleventh Circuit Court of

Appeals (Appeal No. 04-14499), which issued a Mandate on July 31, 2006. Upon a de novo

review of the record and all relevant filings, the Court finds as follows.

I.      **Factual and Procedural History**

On December 19, 1994, Plaintiff Floride Norelus, a/k/a Lavictore Remy, filed a

Complaint alleging that she was sexually harassed, assaulted, battered, and raped by

Defendants Asif Jawaid and Raheel Hameed, managers of two Denny's restaurants where she was employed as a bus-person. Plaintiff also named as Defendants Denny's, Inc. ("Denny's") and T.W. Services, Inc., the corporate owners of the restaurants, and Meos Corporation ("Meos"), the franchisee of the restaurants.

On August 1, 1996, Defendants filed a Motion to Dismiss based on Plaintiff's alleged falsities and misrepresentations during a deposition of Plaintiff and the subsequent filing of a 63-page errata sheet ("the Errata Sheet"). On August 26, 1996, the Court denied the Motion to Dismiss but ordered the reopening of Plaintiff's deposition at her expense and directed Plaintiff to file an appendix identifying the errata changes and explaining in detail the reasons for those changes. On October 16, 1996, the Court directed Plaintiff or her attorneys to pay the costs associated with the reopening of the deposition. Neither Plaintiff nor her attorneys complied with either Order. On December 11, 1996, the Court dismissed the case due to Plaintiff's lack of compliance. (D.E. 347.)

On January 10, 1997, Defendants filed motions for attorneys' fees and costs. Defendants sought to recover fees and costs from the Amlongs pursuant to 28 U.S.C. § 1927, due to their failure to investigate Plaintiff's claims and their pursuance of the case after it became obvious that the action was baseless. The Court referred Defendants' motions to Magistrate Judge Bandstra, who conducted an evidentiary hearing and submitted a Report and Recommendation on February 5, 1998. Judge Bandstra found that the case was frivolous but concluded that Plaintiff's counsel should not pay Defendants' fees and costs. Defendants

filed Objections to Magistrate Bandstra's Report.

Upon a de novo review of the record, the Court sustained Defendants' Objections and granted Defendants' Motions for Fees, Costs and Expenses, on March 21, 2000. (D.E. 475.) Therein, the Court awarded Defendants' attorneys' fees and costs pursuant to 28 U.S.C. § 1927, 42 U.S.C. § 2000e-5(k), Rule 26, and the Court's inherent power, from the date of the submission of the Errata Sheet on June 20, 1996, to the date of the March 21, 2000 Order. The Court further found the Amlongs to be in violation of the Court's October 16, 1996 Order awarding Defendants the costs and attorneys' fees associated with the reopening of Plaintiff's deposition, and ordered the Amlongs to pay those expenses with back interest of 10% per annum from October 26, 1996 to the date of remittence.  On July 27, 2000, the Amlongs filed a Notice of Appeal from this Court's Order Granting Defendants' Motions for Attorneys' Fees and Costs. (D.E. 517.)

On July 31, 2006, the Eleventh Circuit Court of Appeals issued a Mandate ("Eleventh Circuit Mandate," D.E. 613) reversing the portion of the Court's Order requiring the Amlongs to pay the costs of reopening the deposition and to pay back interest, and remanding the case. The Eleventh Circuit further found that this Court committed reversible error when, after referring the issue of sanctions to a magistrate judge for an evidentiary hearing and Report and Recommendation, the Court discarded numerous findings of fact and credibility determinations made by the magistrate judge and substituted its own findings without conducting its own evidentiary hearing. (Id. at 2.)  The Circuit Court held that, "[o]n remand,

-3-

the district court need not conduct a new hearing.  It may accept the magistrate judge's basic findings of fact and then reach its own determination as to whether the lawyers' conduct was objectively unreasonable and vexatious." (Id. at 42.)  In accordance with these instructions and with Local Rule 7.1(B), the Court finds that an additional evidentiary hearing is not necessary in this matter.  Accordingly, Defendants' Motion for Hearing (D.E. 615) is DENIED.  The Court will proceed to address Defendants' Motions for Sanctions.

## II.      Magistrate's February 5, 1998 Report and Recommendation

Magistrate Judge Ted Bandstra conducted extensive evidentiary hearings regarding this matter on April 24, June 13, September 8, and November 12, 1997. ("Report," D.E. 452 at 1.)  On February 5, 1998, Judge Bandstra issued a Report and Recommendation in which he made the following findings.  As an initial matter, the Magistrate Judge found that Plaintiff's claims against all defendants were unreasonable and without factual foundation, thereby warranting attorney's fees under Title VII. (Id. at 8.)  In support, the Magistrate Judge found that Plaintiff's action lacked a sufficient factual basis beyond the uncorroborated and contradictory testimony of Plaintiff herself. (Id. at 6.)  The Magistrate further found that while Plaintiff's counsel brought this action and initially believed Plaintiff's allegations, based almost exclusively on Plaintiff's own recollections and initial corroboration from Plaintiff's brother and a third person, those allegations began to appear questionable soon thereafter. (Id. at 8.)  Several falsehoods emerged from Plaintiff's deposition, on subjects including her name, her social security number and other seemingly insignificant matters.

(Id.) Plaintiff's listed witnesses, including her own family members, friends, and coworkers all testified contrary to Plaintiff's version of the facts, and Plaintiff's own recollection of the facts were often vague and vacillatory throughout the case. (Id. at 8-9.)  The crowning moment, according to the Magistrate's Report, came when Plaintiff filed the 63 page Errata Sheet to her deposition, in which she made over 850 changes, many substantive, thereby rendering her deposition useless and a tremendous waste of time and expenses to all parties. (Id. at 9.)

Based upon these findings, the Magistrate Judge held that Defendants had established that Plaintiff's claims were frivolous against all Defendants. (Id. at 9-10.)  Plaintiff's case,

> presented only her own changing testimony, without corroboration or support from any other witnesses or sources, which was totally or nearly totally discredited by plaintiff's numerous lapses of memory, outright lies, and outlandish comments made during her deposition -- even if made in anger or frustration.  Even plaintiff's own testimony became useless after she filed the lengthy errata sheet leaving her open to further impeachment during her reopened deposition during which she continued to evade reasonable inquiry concerning her evolving account of events alleged in this case.  While plaintiff's counsel may have believed plaintiff with respect to the core allegations of this case, and felt a continuing obligation to represent plaintiff despite her inability to testify consistently, the undersigned finds that plaintiff's case always lacked credible evidence, or any evidence other than plaintiff's own unreliable recollections.

(Id. at 9-10.)  The Magistrate found particularly troubling the facts that Plaintiff and her attorneys had alleged a Title VII claim against Asif Jawaid, individually, when all reported cases in this circuit consistently held that relief under that section is available for claims

against the employer only, not against individual employees. (Id. at 10.)  Finally, the

Magistrate found that Plaintiff's claims were not strengthened in any way by the polygraph

examination she passed, which seemed only to demonstrate her own attorneys' lack of trust

in the allegations of their client. (Id.)  Thus, the Magistrate Judge found that Defendants were

entitled to attorneys' fees from Plaintiff as prevailing parties pursuant to 42 U.S.C. § 2000e-

5(k). (Id.)

On the issue of Defendants' claims for attorneys' fees under 28 U.S.C. § 1927,

however, which provides that any person who multiplies the proceedings in a case

unreasonably and vexatiously may be ordered to pay the extra costs incurred as a result of

such conduct, the Magistrate Judge reached a different conclusion.  The Magistrate Judge

first noted his conclusions that,

> [f]irst, the preparation of the errata sheet and the procedures
> used to do so (i.e., translating through plaintiff's brother and
> possible explanations of questions by plaintiff's counsel) was
> [sic] improper and should have not occurred.  Second, the
> numerous changes listed in the errata sheet only illuminated
> plaintiff's difficulty or inability to relate a consistent account of
> events underlying her claims.  Third, the errata sheet revealed to
> defendants' attorneys and the Court that plaintiff's testimony
> was highly suspicious and required further exploration through
> reopened discovery.

(Id. at 14.)  Yet, the Magistrate Judge also found that the care and detail that went into the

Errata Sheet revealed Plaintiff's attorneys's "grave concern to tell an accurate story in this

case." (Id.)  Judge Bandstra thus concluded that Plaintiff's attorneys "did the best they could

with a most difficult client and did not try to prolong the case or multiply these proceeding

[sic] to gain a tactical advantage over their adversaries." (Id.) The Magistrate Judge therefore

held that there was no evidence of bad faith or improper motive on the part of Plaintiff's

attorneys, nor that they sought to or willfully abused the judicial process by conduct

tantamount to bad faith. (Id. at 15.)  Thus, the Magistrate Judge recommended the denial of

Defendants' Motions for Sanctions pursuant to 28 U.S.C. § 1927. (Id.)

### III.    Analysis

In the Eleventh Circuit's Mandate (D.E. 613) in this matter, the Circuit Court held that

42 U.S.C. § 2000e-5(k) could not have supported this Court's award of sanctions because the

provision authorizes attorney's fees only against litigants, not against counsel. (Id. at 14.)

The Circuit Court further found that Rule 26(g) of the Federal Rules of Civil Procedure also

could not have supported the sanctions award, because the rule only authorizes sanctions

traceable to specific discovery abuses, and this Court had instead premised sanctions on the

Amlongs' decision to proceed vexatiously with a meritless suit. (Id. at 15.)  Thus, the Circuit

Court held that the only sources of authority listed by this Court under which sanctions might

be permissible are 28 U.S.C. § 1927 and the court's inherent powers.  The Circuit Court

found that if sanctions were permissible under § 1927, then they were also permissible under

the Court's inherent powers, and if they were an abuse of this Court's discretion, then they

were also an abuse of discretion under the Court's inherent powers. (Id. at 15-16.)  This

Court will therefore analyze the instant Motions under the proper standards for counsel

liability under § 1927, and determine whether sanctions against the Amlongs are warranted.

Title 28 U.S.C. § 1927, entitled "Counsel's liability for excessive costs" states:

> Any attorney or other person admitted to conduct cases in any court of the Untied States... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Eleventh Circuit has held that the plain language of the statute imposes three essential requirements for an award of sanctions under § 1927: (1) that the attorney engage in "unreasonable and vexatious conduct"; (2) that such conduct must multiply the proceedings; and (3) that the dollar amount of the sanction must bear a financial nexus to the excess proceedings and may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997).

As to the first two elements, the Eleventh Circuit has consistently held that an attorney multiplies proceedings "unreasonably and vexatiously" only when the attorneys' conduct is so egregious that it is "tantamount to bad faith." (Eleventh Circuit Mandate at 16 (quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991)).)  However, the Eleventh Circuit further held that,

> it is clear from the statutory language and the case law that for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct.  The term "unreasonably" necessarily connotes that the district court must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment about whether the conduct was acceptable according to some objective standard.

-8-

(Eleventh Circuit Mandate at 17 (emphasis supplied).)  The term "vexatiously" similarly requires an evaluation of the attorney's objective conduct. (Id. (citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).)  The Circuit Court also confirmed that other circuits have found that the phrase "unreasonably and vexatiously" demands an object analysis and that § 1927 does not require malicious intent of bad purpose. (Id. at 18-19.)  In other words, while evidence of subjective bad faith may aid a determination of objective recklessness, "subjective bad faith is not necessary to a finding of objective bad faith, and... the absence of subjective bad faith does not excuse objectively blameworthy conduct." (Id. at 21 n.1.)  Thus, the Eleventh Circuit concluded that sanctions under § 1927 are measured against objective standards of conduct, and that objectively reckless conduct is enough to warrant sanctions, even if the attorney does not act knowingly and malevolently. (Id. at 20.)

The Court will now analyze Defendant's Motions under this standard.  At the outset, the Court hereby adopts all factual findings and credibility determinations made by Magistrate Judge Bandstra in his Report and Recommendation, as summarized in the previous section.  These include the findings that Plaintiff's claims were frivolous from the outset, that Plaintiff's claims were without independent verification or corroboration, that Plaintiff's own testimony because useless and wasteful upon the filing of the 63 page Errata Sheet, that the preparation of the Errata Sheet and the procedures used to do so were improper and should not have occurred, that the Errata Sheet exposed Plaintiff's inability to relate a consistent account of events underlying her claims, and that Plaintiff's testimony was

highly suspicious.  The Court also accepts the Magistrate Judge's finding that the Amlongs genuinely believed that Plaintiff's claims were meritorious, despite Plaintiff's inability to testify completely and truthfully about several aspects of her case.

However, the Court rejects the legal conclusion drawn by the Magistrate on these facts that the circumstances did not warrant an award of sanctions under § 1927.  Specifically, the Court finds that the Magistrate applied the improper standard of subjective bad faith to the Amlongs' conduct to determine whether § 1927 sanctions were justified, rather than an objective standard that may be satisfied by a finding of objectively reckless conduct.  The Court finds that, under the facts found by the Magistrate Judge, the Amlongs' conduct was objectively reckless when compared to the conduct of a reasonable attorney, and that the Amlongs unreasonably and vexatiously multiplied the proceedings pursuant to their objectively reckless conduct.

In support, the Court adopts the findings contained in the Report of the Magistrate Judge, namely, that, Plaintiff's action lacked a sufficient factual basis beyond the uncorroborated and contradictory testimony of Plaintiff herself, that Plaintiff's claims against all Defendants were unreasonable, that Plaintiff's counsel accepted and believed her allegations based almost exclusively on Plaintiff's own recollections and initial corroboration from her brother and a third person, and filed this lawsuit on that basis. (Report at 6, 8.) Furthermore, as the Magistrate found, almost immediately after beginning to take the testimony of Plaintiff and her allegedly corroborating witnesses, it became clear, even to

-10-

Plaintiff's attorneys, that none of Plaintiff's witnesses could corroborate her claims, and that

her case rested entirely on Plaintiff's vague and often contradictory testimony. (Report at 8.)

At that point, a reasonable attorney would have realized that Plaintiff's case lacked factual

support, and that Plaintiff's own testimony had been "totally or nearly totally discredited by

plaintiff's numerous lapses of memory, outright lies, [and] outlandish comments made during

her deposition..." (Id. at 9.)  The Amlongs were also warned by defense counsel that the case

lacked merit and might result in sanctions. (Id. at 13.)

However, instead of voluntarily dismissing the case or conducting further

investigation or research into Plaintiff's claims, the Amlongs filed an errata sheet 63 pages

long with 868 corrections to Plaintiff's testimony. (Id. at 9.)  Any reasonable attorney that

believed that such an errata sheet was necessary to validate its client's testimony would also

have recognized that such testimony would lack credibility.  As the Magistrate found,

Plaintiff's testimony became useless after the filing of the Errata Sheet, as it exposed her to

further impeachment during her reopened deposition. (Id.)  Given that Plaintiff's own

testimony was the sole evidentiary support existing to potentially corroborate Plaintiff's case,

a reasonable attorney would have realized prior to the filing of the Errata Sheet that, at best,

his or her case was entirely unsubstantiated and unlikely to succeed on the merits or, at worst,

that the case was patently frivolous.  While the Amlongs may have still believed their client's

allegations, the Court does not find that any reasonable attorney would have thought it proper

to file such an errata sheet and attempt to continue to litigate this case that "always lacked

credible evidence, or any evidence other than plaintiff's own unreliable recollections." (Id. at 10.) Thus, the fact that the Amlongs attempted instead to validate Plaintiff's testimony with the Errata Sheet, which engendered "a tremendous waste of time and expense to all parties" (Id. at 9), and continued to vigorously litigate this case, demonstrates unreasonable and vexatious conduct that multiplied the instant proceedings.

Moreover, the Court adopts the Magistrate Judge's findings of impropriety regarding the contents of, and methods used, to generate the Errata Sheet. Specifically, the Court finds that the methods used to prepare the Errata Sheet, including having Plaintiff's brother translate for Plaintiff and Plaintiff's counsel's possible explanations of questions to Plaintiff, were improper. (Id. at 14.) The Court further finds that the numerous changes contained in the Errata Sheet should have related to the Amlongs that Plaintiff was not able to relate a consistent account of the events underlying her claims. (Id.) Therefore, the Court finds that the preparation and filing of the Errata Sheet itself, combined with the improper methods of preparation and the factual content of such Errata Sheet, constituted objectively reckless conduct on the part of the Amlongs, which was so egregious that it was tantamount to bad faith. Moreover, the Amlongs' continued to press forward with their case after the filing of the Errata Sheet and in spite of the fact that Plaintiff continued to evade reasonable inquiry concerning her evolving account of events alleged in this case during her reopened deposition. (Id. at 9.) Taken together, this objectively reckless conduct unreasonably and vexatiously multiplied the instant proceedings.

The Court holds that this finding is consistent with the Court's previous holding that the Amlongs be jointly and severally liable for all of Defendants' fees, costs and expenses related to this lawsuit, from the date of submission of the Errata Sheet on June 20, 1996 to the date of the Court's Order of March 21, 2000, as determined in the Court's Orders of March 21, 2000 (D.E. 475) and June 30, 2000. (D.E. 508.)  Moreover, the amount of those fees, costs, and expenses, as found by Magistrate Judge John J. O'Sullivan in his Report and Recommendation of December 15, 2000 (D.E. 548) and adopted by this Court in its Order of July 29, 2004 (D.E. 586), were based upon the extent of costs allowed under 28 U.S.C. § 1927 and the broad discretion of the district court in determining which costs are taxable. See Cochran v. E.I. duPont de Nemours, 933 F.2d 1533, 1540 (11th Cir. 1991) (holding that the Eleventh Circuit Court of Appeals "refuses to disturb a cost award unless clear abuse of discretion is shown."), cert denied, 502 U.S. 1035 (1992); Powell v. National Football League, 139 F.R.D. 381, 383 (D.Minn. 1991) (holding that an award of costs, expenses and attorneys fees under 28 U.S.C. § 1927 is within the Court's discretion) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).  Accordingly, these findings need not be disturbed by the instant Order.  Fees, costs, and expenses, for each Defendant and all defense counsel shall be payable jointly and severally by Plaintiff Floride Norelus, Karen Amlong, Esq., William Amlong, Esq., and the Law Firm of Amlong & Amlong, P.A.  This award specifically includes the fees, costs and expenses associated with the sanctions motions, evidentiary hearings and objections, as determined in the Magistrate's Report of December

15, 2000 (D.E. 548) and the Court's Order of July 29, 2004 (D.E. 586).

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1.   The Report and Recommendation of U.S. Magistrate Judge Theodore Bandstra (D.E. 452), issued February 5, 1998, is **ADOPTED in part and MODIFIED** in part, consistent with this Order.

2.   The Report and Recommendation of U.S. Magistrate Judge John J. O'Sullivan (D.E. 548), issued December 15, 2000, is **ADOPTED in part and MODIFIED** in part, consistent with this Order.

3.   The four Motions for Attorneys Fees and Costs (D.E. 348-351), filed by Defendants' Denny's, T.W. Services, Meos Corp., and Asif Jawaid on January 10, 1997, are **GRANTED**.  Pursuant to 28 U.S.C. § 1927, Karen Amlong, Esq., William Amlong, Esq., and the Law Firm of Amlong & Amlong, P.A., shall pay, jointly and severally, the reasonable fees, expenses, and costs incurred by all Defendants and all defense counsel from June 20, 1996 to March 21, 2000, as determined in the Magistrate's Report of December 15, 2000 (D.E. 548) and reduced in the Court's Order of July 29, 2004 (D.E. 586),[1] as follows:

---

[1]   The Court notes that, pursuant to the Court's Order Denying Motion for Reconsideration of Order Sustaining Objections to Magistrate's Report and Recommendation and Granting Defendants' Motion for Frees Costs and Expenses and Clarifying Order Dated March 21, 2000 (D.E. 508),  Plaintiff Floride Norelus was held jointly and severally liable for this amount. (Id. at 11.)  This holding was not appealed, and thus remains in full force and effect.

    **a.**      General attorneys' fees are awarded in the amount of $152,241.00 and general costs are awarded in the amount of $6,210.87 to Defendants Denny's, Inc. and T.W. Services, Inc.;

    **b.**      General attorneys' fees are awarded in the amount of $108,786.00 and general costs are awarded in the amount of $1,550.00 to Defendant Meos Corporation;

    **c.**      General attorneys' fees are awarded in the amount of $108,207.50 and general costs are awarded in the amount of $10,743.08 to Defendant Asif Jawaid.

    **DONE AND ORDERED** in Chambers at Miami, Florida this __23rd__ day of August, 2007.

 

                                 **JOAN A. LENARD**
                                 **UNITED STATES DISTRICT JUDGE**

Cc:      U.S. Magistrate Judge Theodore Bandstra
          U.S. Magistrate Judge John J. O'Sullivan
          U.S. Magistrate Judge Edwin G. Torres
          Avril Marcus, Esq.
          Jon K. Stage, Esq.
          Mr. Rahmeel Hameed, <u>pro se</u>
          Dale L. Friedman, Esq.
          Joseph Chambrot, Esq.
          William Amlong, Esq.
          Karen Amlong, Esq.
          Theodore Dempster, Esq.
          Debra Valladares, Esq.
          David Lipman, Esq.
          **94-2680-CIV-LENARD/TORRES**